IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMIE WARDLE, | : | |
| | : | |
| Plaintiff | : | Civil Action No. |
| v. | : | |
| | : | |
| MILTON HERSHEY SCHOOL, | : | JURY TRIAL DEMANDED |
| | : | |
| Defendant | : | |

# COMPLAINT

## PARTIES

1. Plaintiff, Jamie Wardle ("Ms. Wardle" or "Plaintiff"), a married, adult individual, currently resides at 435 Cherokee Drive, Mechanicsburg (Cumberland County), Pennsylvania 17050.

2. Defendant, Milton Hershey School ("Defendant" or "MHS"), is a nonprofit Pennsylvania corporation having its principal place of business at 1201 Homestead Lane, Hershey (Derry Township), PA 17033.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this action because Ms. Wardle's claims arise under Americans with Disabilities Act of 1990, 42 U.S.C. §12101, *et seq.*, as amended ("ADA"); and the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §2601, *et seq.*

4. This is a civil action involving claims in excess of $75,000, exclusive of interest and costs. Jurisdiction is based on 28 U.S.C. §1331 (federal question).

5. Ms. Wardle exhausted her administrative remedies by filing a Charge against Defendant with the Equal Employment Opportunity Commission ("EEOC") at Charge No. 530-2023-00888.

6. Ms. Wardle received the EEOC's notice of right to sue fewer than 90 days before her filing of this complaint.

7. Venue over this action lies with the United States District Court for the Middle District of Pennsylvania.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

8. From approximately March 31, 2017 to February 14, 2022, Ms. Wardle (then known as Jamie Byerly) was employed by Defendant as a full-time Director of Medical Services and Nursing.

9. At various relevant times, Ms. Wardle was a qualified employee and was able to perform the essential functions of her job with or without accommodation.

10. At various relevant times, Ms. Wardle was a member of a "protected class" and had legally protected disabilities under the Americans with Disabilities Act, as amended, including:

      (a)    a physical and/or mental impairment that substantially limited one or more major life activities;

      (b)    a record of such impairment(s); and/or

      (c)    being regarded as having such impairment(s).

11. At various relevant times, Ms. Wardle was eligible for FMLA and short-term disability leave and was entitled to certain rights and protections under governing law.

12. On February 23, 2020, Ms. Wardle had emergency abdominal surgery at Easton Hospital, in Easton, PA.

13. During her medical leave, Ms. Wardle's Manager/Supervisor, Beth Shaw, called her several times, emphasizing that her return to work was necessary due to COVID-related issues affecting Milton Hershey School medical operations.

14. On March 9, 2020, Ms. Wardle returned to work to prevent any further harassment by Ms. Shaw.

15. On March 11, 2020, Ms. Wardle was taken emergently by Heather Wolf, her Administrative Assistant, from Milton Hershey School to Penn State Hershey Medical Center and underwent a second emergency abdominal surgery.

16. In October 2021, during a pre-operation exam for Ms. Wardle's Abdominoplasty, her surgeon, Dr. Richard de Ramon, felt and identified muscle separation in her abdomen.

17. Recognizing that the abdominal wall separation needed to be addressed during surgery, Dr. de Ramon ordered the abdominal nerve block for his anticipated muscle repair.

18. On December 28, 2021, Ms. Wardle had the Abdominoplasty, during which Dr. de Ramon repaired an underlying medical condition of abdominal wall weakness related to diastasis recti (abdominal separation).

19. In accordance with Defendant's policies, and in advance of her December 28, 2021 surgery, Ms. Wardle filed for salary continuance benefits and for leave under the FMLA due to a "serious medical condition."

20. Defendant approved Ms. Wardle's FMLA leave from December 28, 2021 through February 13, 2022.

21. Defendant, through its agent and third-party administrator (Workpartners), granted Ms. Wardle's FMLA leave, but initially denied her claim for benefits under Defendant's Salary Continuance Plan. Attached as **Exhibit P-1** is a copy of Workpartners' January 21, 2022 denial of salary continuance based on what it characterized as Ms. Wardle's "cosmetic surgery" on December 28, 2021.

22. Ms. Wardle's treating surgeon, Richard de Ramon, M.D., of Mechanicsburg, PA, provided additional medical evidence in support of Ms. Wardle's appeal of Workpartners' denial.

23.     Dr. de Ramon specifically verified that during Ms. Wardle's Abdominoplasty surgery, he had repaired an underlying medical condition of abdominal wall weakness related to abdominal separation.

24.     Based on this additional evidence, Defendant, through its agent and third-party administrator, approved Ms. Wardle's salary continuance from December 28, 2021 through February 13, 2022.  Attached as **Exhibit P-2** is a copy of Workpartners' January 31, 2022 approval of Ms. Wardle's claim.

25.     In a January 31, 2022 email directed to Defendant's Senior Director, Barbara Malecki, Ms. Wardle confirmed that she could return to work without restrictions on February 14, 2022.

26.     In her email, Ms. Wardle also requested accommodation to work from home with a 10-pound lifting restriction prescribed by her physician.  Attached as **Exhibit P-3** is a copy of Ms. Wardle's January 31, 2022 email.

27.     By email dated February 1, 2022, Ms. Malecki informed Ms. Wardle that MHS evaluated working from home on a case-by-case basis.  Attached as **Exhibit P-4** is a copy of Ms. Malecki's email.

28.     In her email, Ms. Malecki further stated that Human Resources had decided to await Ms. Wardle's full release to work without restrictions based on the circumstances as well as MHS's general position that working from home was never preferred.

29. Contrary to Ms. Malecki's statement, MHS's policy and/or practices had generally permitted employees to work remotely.

30. As the Director of Medical and Nursing Services, when not on MHS's campus, Ms. Wardle was required to work remotely to support the Medical Department's operations.

31. Defendant gave VPN access to all Directors so they could work remotely.

32. Ms. Wardle had worked remotely for the first 21 days of her medical leave until MHS disabled her access in January 2022.

33. On or about February 7, 2022, MHS granted a salary raise to Ms. Wardle.

34. On or about February 13, 2022, Ms. Wardle's Manager/Supervisor, Beth Shaw, called and directed Ms. Wardle to meet with her and Human Resources on February 14, 2022 (the day Ms. Wardle was scheduled to return to work without restrictions from FMLA leave).

35. Ms. Wardle questioned whether she was being fired (recognizing that meeting with Human Resources was not a standard operating procedure for an employee returning from medical leave). Employees only report to Human Resources for termination.

36. In response to Ms. Wardle's inquiry, Ms. Shaw stated that all options would be discussed tomorrow (February 14, 2022).

37. On February 14, 2022, Ms. Wardle returned to work from her approved FMLA leave and met with her Manager/Supervisor, Beth Shaw, and Amy Master, Senior Director of Human Relations.

38. Ms. Masters abruptly informed Ms. Wardle that she was being terminated due to unstated "performance issues" and due to a trust issue related to her "medically unnecessary" surgery on December 28, 2021.

39. By letter dated February 14, 2022, and directed to Ms. Wardle, Ms. Master confirmed that Ms. Wardle had been terminated from employment. Attached as **Exhibit P-5** is a copy of Ms. Master's February 14, 2022 letter.

40. Defendant's Corrective Action Policy generally required that employees be provided with three written warnings before they could be terminated. Attached as **Exhibit P-6** is a copy of Defendant's policy.

41. Defendant failed to follow its Corrective Action Policy and failed to provide Ms. Wardle with any written notice prior to termination.

42. Defendant's interference with Ms. Wardle's rights during her approved leave also violated its policies and/or practices governing Salary Continuance, FMLA leave, and/or ADA accommodation.

43. Defendant's policies and/or practices and their enforcement thereof resulted in its disparate treatment of Ms. Wardle, as compared to her similarly situated comparators (including her successor).

44. At various relevant times, Ms. Wardle engaged in "protected activity" within the meaning of federal law including requesting reasonable accommodation by asking for permission to work from home with a 10-pound lifting restriction.

45. Defendant failed to engage in an interactive process to confirm the nature and extent of Ms. Wardle's disabilities.

46. Defendant was aware of Ms. Wardle's disabilities and retaliated against her after she engaged in protected activity.

47. Defendant failed to accommodate Ms. Wardle's disabilities and treated her less favorably than her comparators (including her successor) with respect to the compensation, terms, conditions, and privileges of employment.

48. Defendant discriminated and retaliated against Ms. Wardle based on her disabilities and her FMLA leave.

49. Ms. Wardle received one or more materially adverse actions during her employment up to and including her termination on February 14, 2022.

50. Defendant had no legitimate, non-discriminatory, non-retaliatory reason for terminating Ms. Wardle.

51. Defendant's pretextual and retaliatory motive is further established by MHS's ongoing antagonism toward Ms. Wardle, by the close temporal proximity between Ms. Wardle's protected activity and MHS's wrongful termination, and/or by the surrounding circumstances.

52. Defendant violated the ADA and the FMLA by impermissibly evaluating Ms. Wardle while she was on approved medical leave.

53. Defendant interfered with Ms. Wardle's rights under the ADA and the FMLA by asking or requiring her to work during her medically approved leave and by not restoring her to her prior position or an equivalent job.

## COUNT I
## DISABILITY DISCRIMINATION/FAILURE TO ACCOMMODATE

54. Ms. Wardle incorporates by reference herein paragraphs 1 through 53 above.

55. All of Defendant's illegal actions and inactions, as alleged herein, were done or not done by its supervisors, managers, and officers (collectively, "Decision-makers"), acting with actual, apparent, or ostensible authority.

56. As alleged more fully above, MHS discriminated against Ms. Wardle based on her disabilities.

57. Defendant failed to engage in an interactive process to confirm the nature and extent of Ms. Wardle's disabilities.

58. Defendant failed to accommodate Ms. Wardle's disabilities and treated her less favorably than her comparator(s) with respect to the compensation, terms, conditions, and privileges of employment.

59. Defendant had no legitimate, non-discriminatory reason for terminating Ms. Wardle.

60. As a result of Defendant's unlawful conduct, Ms. Wardle has sustained lost wages, lost bonuses, lost retirement and employee benefits, medical expenses, front pay, and other unliquidated losses and damages in excess of $75,000, plus interest and costs.

61. As a further result of Defendant's unlawful conduct, Ms. Wardle has suffered emotional pain, suffering, inconvenience, mental anguish, depression, anxiety, related medical and mental health conditions, and loss of life's enjoyment in an unliquidated amount in excess of $75,000, plus interest and costs.

62. As a further result of Defendant's and its Decision-makers' acting with malice or reckless indifference to Ms. Wardle's federally protected rights, she is entitled to punitive damages in excess of $75,000, plus interest and costs.

63. Additionally, as a result of Defendant's unlawful conduct, Ms. Wardle is entitled to attorneys' fees in excess of $75,000, plus interest and costs.

**WHEREFORE**, Plaintiff, Jamie Wardle, demands that judgment be entered in her favor and against Defendant, Milton Hershey School, including the following relief:

A. reinstatement to Ms. Wardle's prior position or a comparable position with Defendant;

B. compensation for back pay, front pay, lost retirement, medical expenses, and other lost employee compensation and benefits;

C. compensatory, punitive, and statutory damages in amounts to be determined at trial;

D. attorneys' fees, costs, and interest; and

E. such other relief as the Court deems appropriate.

## COUNT II
## DISABILITY RETALIATION

64. Ms. Wardle incorporates by reference herein paragraphs 1 through 63 above.

65. As alleged more fully above, Ms. Wardle engaged in protected activity including requesting accommodation for her disabilities.

66. MHS discriminated and retaliated against Ms. Wardle after she engaged in protected activities including wrongfully evaluating her and terminating her immediately after she returned from medical leave.

-11-

67. As a result of Defendant's unlawful conduct, Ms. Wardle has sustained lost wages, lost bonuses, lost retirement and employee benefits, medical expenses, front pay, and other unliquidated losses and damages in excess of $75,000, plus interest and costs.

68. As a further result of Defendant's unlawful conduct, Ms. Wardle has suffered emotional pain, suffering, inconvenience, mental anguish, depression, anxiety, related medical and mental health conditions, and loss of life's enjoyment in an unliquidated amount in excess of $75,000, plus interest and costs.

69. As a further result of Defendant's and its Decision-makers' acting with malice or reckless indifference to Ms. Wardle's federally protected rights, she is entitled to punitive damages in excess of $75,000, plus interest and costs.

70. Additionally, as a result of Defendant's unlawful conduct, Ms. Wardle is entitled to attorneys' fees in excess of $75,000, plus interest and costs.

**WHEREFORE**, Plaintiff, Jamie Wardle, demands that judgment be entered in her favor and against Defendant, Milton Hershey School, including the following relief:

A. reinstatement to Ms. Wardle's prior position or a comparable position with Defendant;

B. compensation for back pay, front pay, lost retirement, medical expenses, and other lost employee compensation and benefits;

C. compensatory, punitive, and statutory damages in amounts to be determined at trial;

D. attorneys' fees, costs, and interest; and

E. such other relief as the Court deems appropriate.

## COUNT III
## FMLA INTERFERENCE

71. Ms. Wardle incorporates by reference herein paragraphs 1 through 70 above.

72. During her employment, Ms. Wardle was an "eligible employee" entitled to leave under the FMLA, and Defendant was a covered "employer" subject to the FMLA's requirements.

73. In her FMLA application, Ms. Wardle timely notified Defendant that she intended to take leave due to her "serious health condition."

74. Defendant and/or its agent/third-party administrator approved Ms. Wardle's FMLA leave from December 28, 2021 through February 13, 2022.

75. During Ms. Wardle's employment, Defendant interfered with, restrained, and/or denied her exercise of, or attempt to exercise, her entitlements, benefits, and protections under the FMLA, 29 U.S.C. § 2601 et seq., in that:

(a) On information and belief, Defendant failed to timely post and/or provide certain required notices to Ms. Wardle under FMLA including

confirmation of her right to job restoration, as required by 29 C.F.R. §§ 825.208, 825.300(b)(1), and related provisions.

  (b) Immediately after she returned to work from approved FMLA leave, Ms. Wardle was fired by Defendant.

  (c) In violation of the FMLA, after she timely returned from FMLA leave, Defendant failed or refused to restore Ms. Wardle to her job or an equivalent position.

  (d) Defendant violated the FMLA by allowing or requiring her to work during her approved FMLA leave.

  (e) Defendant violated the FMLA by discouraging Ms. Wardle from using FMLA leave.

  (f) Defendant violated the FMLA by evaluating and disciplining Ms. Wardle while she was on approved FMLA leave.

  (g) Ms. Wardle was entitled to benefits under the FMLA, and Defendant denied those benefits.

  76. As a result of Defendant's wrongful interference with her rights under FMLA, Ms. Wardle is entitled to lost wages, lost benefits, front pay, reinstatement, liquidated damages, double damages, attorneys' fees, costs, statutory interest, and other damages authorized by the FMLA, all of which are in excess of $75,000.

**WHEREFORE**, Plaintiff, Jamie Wardle, demands that judgment be entered in her favor and against Defendant, Milton Hershey School, including the following relief:

A. equitable relief including employment with Defendant, reinstatement to her prior position with Defendant, or a promotion;

B. compensation for back pay, front pay, lost retirement, medical expenses, and other lost employee benefits;

C. liquidated (double) damages and other damages authorized under the FMLA in amounts to be determined at trial;

D. attorneys' fees, costs, and statutory interest; and

E. such other relief as the Court deems appropriate.

## COUNT IV
## FMLA RETALIATION

77. Ms. Wardle incorporates by reference herein paragraphs 1 through 76 above.

78. During Ms. Wardle's employment, Defendant retaliated against, discharged, and/or otherwise discriminated against her in violation of her rights under FMLA in that:

(a) Ms. Wardle was entitled to FMLA-qualifying leave.

(b) Immediately after Ms. Wardle returned to work from approved FMLA leave, she was wrongfully terminated in violation of the FMLA.

(c) Ms. Wardle's wrongful termination was causally related to her invocation of her rights under the FMLA.

(d) Defendant had no legitimate, non-retaliatory reason for abruptly terminating Ms. Wardle.

(e) Before and after Ms. Wardle took FMLA leave, she had no performance-related issues warranting termination.

(f) Defendant's and its Decision-makers' shifting, inconsistent reasons for termination reflected a pretext for retaliation;

(g) Defendant's and its Decision-makers' ongoing antagonism represented a pretext for retaliation;

(h) Defendant's and its Decision-makers' retaliatory motive and pretext are further established by the surrounding circumstances and by the close temporal proximity between Ms. Wardle's protected activity and Defendant's wrongful termination of Ms. Wardle.

(i) Defendant's unlawful motive was a substantial motivating factor in its decision to terminate Ms. Wardle.

79. After interfering with her rights under the FMLA, and after discriminating and retaliating against her, Defendant failed to restore Ms. Wardle to her position as a Director of Medical Services and Nursing and/or failed to

restore her to an equivalent job with equivalent pay, benefits, and other terms, conditions, and privileges of employment.

80. As a result of Defendant's wrongful violation of her rights under FMLA, and as a result of Defendant's wrongful discrimination and retaliation, Ms. Wardle is entitled to lost wages, lost benefits, front pay, reinstatement, liquidated damages, double damages, attorneys' fees, costs, statutory interest, and other damages authorized by the FMLA, all of which are in excess of $75,000.

**WHEREFORE**, Plaintiff, Jamie Wardle, demands that judgment be entered in her favor and against Defendant, Milton Hershey School, including the following relief:

A. equitable relief including employment with Defendant, reinstatement to her prior position with Defendant, or a promotion;

B. compensation for back pay, front pay, lost retirement, medical expenses, and other lost employee benefits;

C. liquidated (double) damages and other damages authorized under the FMLA in amounts to be determined at trial;

D. attorneys' fees, costs, and statutory interest; and

E.  such other relief as the Court deems appropriate.

                                Respectfully submitted,

                                KEEFER WOOD ALLEN & RAHAL, LLP

Dated: 05/09/2023              By:  s/ Bradford Dorrance
                                          Bradford Dorrance, PA I.D. #32147
                                          417 Walnut Street, 3rd Floor
                                          P. O. Box 11963
                                          Harrisburg, PA 17108-1963
                                          bdorrance@keeferwood.com
                                          (717) 255-8014 (phone)

                                (Attorneys for Plaintiff)